THE STATE ex rel. FRANK W. McALLISTER, Attorney-General, v. JOHN W. DUNN.

In Banc, February 15, 1919.

1. **TREASURER:** Eligibility of Deputy Collector. In view of the statute (Sec. 3756, R. S. 1909) declaring that "no sheriff, marshal, clerk or collector or the deputy of any such officer, shall be eligible to the office of treasurer of any county," one who was deputy collector of the City of St. Louis and held that office at the time of his election to the office of treasurer of the city and thereafter until a short time before the term of the office of treasurer began, cannot hold the office of treasurer. He was incapable of being lawfully chosen treasurer. The statute does not mean that a deputy collector may be elected treasurer while still such deputy, and take the office of treasurer if he is not such deputy at the time he actually assumes the office of treasurer.

2. **ELIGIBILITY:** Meaning: Legislative Intention. Admitting that the word "eligible" may mean both "electable" or "capable of

being chosen" and "qualified to hold office," whether it is to be given the one meaning or the other depends upon the legislative purpose expressed in the statute using it and in statutes *in pari materia.*

*Held*, by BOND, C. J., concurring, that the term "eligible'" when used in the statutes or Constitution without contextual qualification or modification refers to the legal capacity to hold the office at the time of the election or appointment, and that the qualification of the person appointed or elected must exist at the time of the accrual of his right or title thereto.

3. ———: **Vain Legislative Purpose: Incompatible Offices.** The word "eligible" will not be so construed as to render a legislative enactment a vain and useless thing. If the duties of two offices are incompatible, a statute which says that a person who holds one shall not be eligible to the other will not be held to mean that an officer can be elected or appointed to the other and then resign the one he holds and take charge of the other. The Legislature intended that the same person cannot be collector and treasurer at the same time, or step out of the office of collector into that of treasurer, since the duties of receiving and granting acquittance for public money are incompatible.

## Quo Warranto.

WRIT ISSUED.

*Frank W. McAllister,* Attorney-General, *Clarence P. Le Mire,* Assistant Attorney-General, and *Wilfley, McIntyre, Nardin & Nelson* for relator.

(1) Since the respondent was deputy collector of the City of St. Louis on the date of the election in November, 1918, he was not eligible to the office of treasurer of said city, and therefore, is not now entitled to that office. R. S. 1909, sec. 3756. (2) The weight of authority is that the term "eligible" as used in a statute means capacity to be chosen, and that therefore the qualifications must exist at the time of election. 29 Cyc. 1376; Searcy v. Grow, 15 Cal. 117; Taylor v. Sullivan, 45 Minn. 309; Roane v. Matthews, 75 Miss. 94; State v. Moores, 52 Neb. 770; State v. Lake, 16 R. I. 511; State ex rel. Nourse v. Clark, 3 Nev. 566; People v. Purdy, 47 N. Y. Supp. 601; Com. v.

Pyle, 18 Pa. St. 519; In re George H. Corliss, 11 R. I. 638; Finklea v. Farish, 160 Ala. 230; Searcy v. Grow, 15 Cal. 117; Sheehan v. Scott, 145 Cal. 686; Reynolds v. Howell, 126 Pac. (Wash.) 954; Taylor v. Sullivan, 45 Minn. 309; Shepherd v. Sartain, 185 Ala. 439; State ex inf. Major v. Breuer, 235 Mo. 240; State ex rel. McKelvie v. Wait, 95 Neb. 806; Cost v. Kelly, 255 Pa. 475. (3) It is a cardinal rule of construction that the words of a statute should be so construed as to effectuate the purpose and intent of the lawmakers, hence that construction should be adopted which will best subserve the general purpose for which the law was enacted. Reynolds v. Howell, 126 Pac. (Wash.) 954; McKelvie v. Wait, 95 Neb. 806; Sutherland on Statutory Construction, par. 363; United States v. Goldenberg, 168 U. S. 102; Sutherland on Statutory Construction, par. 369; Springfield v. Butterfield, 98 Me. 155.

*Edward W. Foristel* and *Wells Blodgett Priest* for respondent.

(1) No ineligibility existed as to respondent at the time of taking office as treasurer of the City of St. Louis, and therefore relator's bill fails to state a cause of action against respondent. Bradfield v. Avery, 102 Pac. (Idaho) 687; State ex rel. Thornburg v. Huegle, 112 N. W. (Iowa) 234; People v. Hamilton, 24 Ill. App. 609; Smith v. Moore, 90 Ind. 294; Privett v. Bickford, 26 Kan. 52; State v. Smith, 14 Wis. 497; Kirkpatrick v. Brownfield, 97 Ky. 558; Demaree v. Scates, 50 Kan. 275; Shuck v. State, 135 Ind. 63; People v. Leonard, 73 Cal. 230; State ex rel. Perime George v. Van Beek, 19 L. R. A. 622; State ex rel. v. Murray, 28 Wis. 96; State v. Trumpf, 50 Wis. 103; State ex rel. Oakley v. Fowler, 32 Atl. (Conn.) 162; Martin v. Kenyon, 134 N. Y. Supp. 1007; State ex rel. West v. Breckenridge, 126 Pac. (Okla.) 806; Hoy v. State, 81 N. E. (Ind.) 509; State ex rel. Ryors v. Breuer, 235 Mo. 240; King v. Parry, 4 East, 548; People ex

rel. Miller v. Mynderse, 140 App. Div. (N. Y.) 789;
State ex inf. Barker v. Koeln, 270 Mo. 174.

BLAIR, J.—Respondent was deputy collector of
the City of St. Louis. He became a candidate for the
office of treasurer of that city and received a majority
of the votes cast at the election. Respondent held
his office of deputy collector until after November
election and until a short time before the term of
treasurer began. This is a proceeding to oust him
from the office of treasurer, which office he has as-
sumed.

This case involves a construction of Section 3756,
Revised Statutes 1909, which reads thus: "No sheriff,
marshal, clerk or collector or the deputy of any such
officer, shall be eligible to the office of treasurer of any
county."

It is conceded that under the 19th clause of Sec-
tion 8057, Revised Statutes 1909, Section 3756 applies
to the City of St. Louis.

Relator's position is that under Section 3756 a
deputy collector is incapable of being lawfully chosen
treasurer. Respondent's contention is that a deputy
collector may be elected while still such deputy and
may take the office if he is not a deputy collector at
the time he actually assumes the office.

The authorities in other jurisdictions hopelessly
conflict on the abstract question whether the word
"eligible" means "capable of being chosen" or "cap-
able of holding" office. Commentators disagree as to
which meaning is supported by the weight of au-
thority. On this question cases are frequently cited which
we do not think bear upon the point at all. In State
ex rel. v. Smith, 14 Wis. 497, it was held that an
alien was incapable of holding office in Wisconsin. In
State ex rel. v. Murray, 28 Wis. 96, it was held that
while an alien might not hold office, yet one who had
taken out first papers and was then elected to office
and afterward, prior to entering upon the duties of

the office, was naturalized, was lawfully in possession of the position. No statute or constitutional provision was involved. The sole question was whether public policy rendered the relator incapable of being chosen for office or whether it permitted him to be chosen before taking out his final papers and then permitted him to assume and hold the office after taking out such papers. There was no real question as to the meaning of any statute or constitutional provision, nor yet as to the meaning of any previously formulated and declared rule. The question was whether public policy required this rule or that. In that case the court formulated the principle. In this case the question is as to the *meaning* of a rule of policy formulated and enacted into a statute by the Legislature. The question in that case is wholly unlike that in this. The same thing, for the same reason, is true of the following decisions: State et al. v. Trumpf, 50 Wis. 103; State ex rel. v. Van Beek, 87 Ia. 569. Other cases cited are based upon statutory or constitutional provisions which expressly relate to capacity to *hold* office. [Privett v. Bickford, 26 Kan. 52; State ex rel. v. Fowler, 66 Conn. 294.] Other authorities referred to are based upon provisions to the effect, in substance, that "no person shall be a member," etc. [Secs. 2 and 6 of Art. I, and Sec. 3 of 14th Amendment, Constitution of the United States.] In some of these and other provisions language is used expressly designating qualifications which must be possessed at the time of election.

It seems obvious that a provision relating solely to *holding* an office or *being* a member does not open the way for any decision of a question like that in this case. The same thing is true of provisions expressly referring to qualifications at the time of election.

The courts differ as to the primary meaning of the word "eligible." Some hold its primary meaning is "electable" or "capable of being chosen;" others,

that it is "qualified to hold office." Some hold that the word is susceptible of both meanings, and that in each case it is necessary, in accordance with a well settled canon of construction, to give the word the meaning which will carry out the purpose of the Legislature. [Demaree v. Scates, 50 Kan. l. c. 278; Kirkpatrick v. Brownfield, 97 Ky. l. c. 562 et seq.] This seems to us the correct conclusion. To apply to the word elibible in every case a fixed meaning without regard to the context, the law *in pari materia*, the evil to be remedied or averted, would be to overturn vital rules of construction and miss the legislative intent in each case in which the law-making body happened to use the word in another, though legitimate, sense. Upon this question this court has already declared itself. In State ex inf. v. Breuer, 235 Mo. l. c. 250, 251, in a concurring opinion by VALLIANT, J., this court, six judges concurring, held that whether the word eligible, used in a statute, is used with reference to the election or the time of taking office "depends on the context and on the subject." We had before us in that case most of the authorities cited in this. After a re-examination of these and others now brought to our attention, we see no reason for receding from the position taken in that case.

In connection with the original enactment of Section 3756, Revised Statutes 1909 (See Arts. II and IV, Chapter on County Treasurer, R. S. 1835), was enacted a section providing that "all collectors, sheriffs, clerks, constables and other persons, chargeable with monies belonging to any courts, shall render their accounts to, and settle with, the county court at each stated term thereof, pay into the county treasury any balance which may be due the county, take duplicate receipts therefor and deposit one of the same with the clerk of the county court, within five days thereafter." The word "courts" is apparently a misprint for "county." It appears as "county" in Revised Statutes 1845, Chap. 41, Art. II. This section has been carried forward

without change. [Sec. 3772, R. S. 1909.] Then, as now, the term of the (*ex-officio*) collector ended on January 1st. The statute made the treasurer's office an appointive one. [Sec. 1, Art. I, R. S. 1835, p. 150.] No term was fixed. What did the Legislature mean when it enacted, in this connection, the provision that "no sheriff, clerk or collector, or the deputy of either, shall be eligible to the office of treasurer?" If we assume the word "eligible" was then used in the sense respondent now seeks to give it, a collector could have been appointed treasurer by the county court, then could subsequently have resigned as collector and lawfully qualified as treasurer. This construction, reduced to its lowest terms, would mean that what the Legislature intended was that one could not be both collector and treasurer at the same time. It is a well settled rule that the Legislature is not to be held to have done a vain and useless thing. It is elementary law that one may not hold two offices the duties of which are incompatible. What greater incompatibility could be conceived than the duty of paying and the duty of receiving and granting acquittance for public money? If one person could be both collector and treasurer, he would pay over the money as collector and receive it as treasurer, and, as treasurer, issue a receipt to himself, as collector. Under the general law it is settled no man could have held these two positions. Construed as respondent construes it, the statute added nothing whatever to the law and was a useless enactment, a vain and foolish thing. The general law, already in force, covered the whole matter. So far as it concerns the collector, the evil designed to be averted by the statute was not merely that one man should not hold two incompatible offices, but that no man should be put in the possible position of receiving payment from himself though he hold but one office, that of treasurer.

Section 19 of Article 2 of the Constitution, and Section 11446, Revised Statutes 1909, are construed to

State ex rel. McAllister v. Dunn.

apply only to those who " 'have been determined by legal authority to be in default, or admit they are in default. Thus 'default is said to mean a wilful and corrupt omission to pay over funds.' " [State ex inf. v. Breuer, 235 Mo. l. c. 249.] This section, therefore, does not appear to cover the case of a collector who has public money in his hands at the end of his term about which there is no pending dispute, but which he must pay over before he can get final acquittance as collector. However that may be, these provisions were incorporated in our law in 1872 and 1875, forty years after the enactment, in all legal substance, of Section 3756.

It seems clear that unless the Legislature meant that a collector was incapable of being chosen treasurer it enacted a useless statute, and it left the law in such condition that one could be chosen treasurer and take and hold the office when, in all probability, public money in his hands in his former official capacity would have to be received and receipted for by himself in his new official capacity. That the Legislature intended to accomplish *something* is not an unreasonable conclusion. That the statute should be construed to effect this, if on its face it is open to two reasonable constructions, is settled law. That the construction given the statute by relator clearly would reach an evil very likely to occur under the law at the time the statute was enacted is apparent. Relator's construction explains the enactment of the law. Respondent's construction leaves it without reasonable basis and opens the way for practices which none can defend.

These considerations lead to the conclusion that relator's construction is the only one which reasonably could be applied to the statute as originally enacted in 1835, when "the context and the subject" are given their proper force. It is not contended there has been any amendment of the section. The change of the treasurer's office from an appointive to an elective one had no tendency to amend the section or remove the

disqualification. In justice to counsel it is proper to say they do not so contend. Neither is it contended or suggested that a deputy collector is not, or ought not to be, upon the same footing as his chief.

It follows that the writ of ouster must be awarded. So ordered.

All concur; *Bond, C. J.,* in separate opinion.

BOND, C. J. (concurring).—I concur in the majority opinion for the following reasons: I think the term "eligible" when used in statutes or the Constitution without contextual qualification or modificatory terms, refers to the legal capacity to hold an office at the time of election or appointment thereto of the person designated. The right and title to an office is determined by a valid election or appointment thereto, hence the qualification of the person chosen or appointed must exist at the time of the accrual of his right and title. [See 29 Cyc. 1376, par.b and cases cited.] Intimations to the contrary in some of our previous rulings (State ex inf. v. Breuer, 235 Mo. 240 et cases cited) should be overruled.

For these reasons I concur in the result of the majority opinion.